UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMIRO PIMENTEL-GARCIA,<br><br>Defendant. | Case No. 4:07-cr-00088-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Ramiro Pimentel-Garcia's Motion for Compassionate Release (Dkt. 447) seeking release pursuant to 18 U.S.C. § 3582(c). The Government has filed its Response opposing the Motion, and Mr. Pimentel-Garcia has filed his Reply. Dkts. 449, 450.

After considering the briefing and record, the Court will grant the Motion for the reasons set forth below.

## BACKGROUND

Mr. Pimentel-Garcia was found guilty following a jury trial of one count of

MEMORANDUM DECISION AND ORDER - 1

conspiracy to possess/distribute a controlled substance, five counts of possession with intent to distribute/distribution/aid and abet, and one count of use of a communication facility. The methamphetamine distribution conspiracy "began on or before July 28, 2004, and continued through April 4, 2007" operating in the Blackfoot area and distributing to areas in eastern Idaho, Montana, and Wyoming. PSR ¶ 64. Mr. Pimentel-Garcia was one of two key figures in the conspiracy. *Id*.

After factoring in the substantial drug quantities, a 3-level enhancement for his role as a manager or supervisor of the conspiracy, and a criminal history category of I, Mr. Pimentel-Garcia's guideline range was 324-405 based on a total offense level of 41. On June 5, 2008, after considering his age, health issues, and deportation status, the Court sentenced Mr. Pimentel-Garcia to 300 months of incarceration. Dkts. 287, 288. His sentence was subsequently reduced to 262 months based on a total offense level of 39 following a change in the United States Sentencing Guidelines which retroactively reduced the base offense levels in the drug quantity table in USSG § 2D1.1 by two levels. Dkt. 435.

On April 15, 2020, Mr. Pimentel-Garcia filed his first Motion for Compassionate Release. Dkt. 440. He sought release from the Warden on the grounds that his age and various health conditions qualified him for release. The Warden denied the request and that decision was affirmed on administrative

**MEMORANDUM DECISION AND ORDER - 2**

appeal. Dkt. 440 at 8,10. Specifically, the BOP determined that he was not eligible for release under the BOP Program Statement 5050.50 provision pertaining to Elderly with Medical Conditions because he did not meet all of the criteria given that his medical conditions were being managed and he was considered stable.[1] *Id*. His motion essentially sought relief on the same grounds, and the Government opposed it. Dkt. 444. Although COVID-19 was addressed in the Response and the Reply, it was not the focus of the motion itself or the Court's analysis. Rather, the motion was based solely on Mr. Pimentel-Garcia's age and various medical conditions. The Court denied the motion on the grounds that even assuming he had established an extraordinary and compelling reason for release, Mr. Pimentel-Garcia continued to pose a risk of danger to the community. Dkt. 445.

Mr. Pimentel-Garcia currently seeks compassionate release focusing on (1) his age, obesity, and other factors that increase his risk of an adverse outcome if he

---

[1] BOP Program Statement 5050.50 provides that Elderly Inmates with Medical Conditions may qualify for a reduction in sentence if they meet the following criteria:

- Age 65 and older.
- Suffer from chronic or serious medical conditions related to the aging process.
- Experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility.
- Conventional treatment promises no substantial improvement to their mental or physical condition.
- Have served at least 50% of their sentence.

MEMORANDUM DECISION AND ORDER - 3

were to be reinfected with COVID-19, and (2) his age coupled with his various medical conditions and that fact that he has served 80% of his sentence. The Government objects to the first ground but has failed to address the second. The Government claims that because he previously had been infected with and recovered from COVID-19 and has been offered the COVID-19 vaccine, Mr. Pimentel-Garcia does not present an extraordinary and compelling reason for release. Additionally, the Government contends that he remains a danger to society given that he was a leader or organizer of a long-standing conspiracy and was accountable for introducing sixty-six pounds of methamphetamine into the community.[2]

Mr. Pimentel-Garcia is currently in the custody of the Bureau of Prisons at FCI Butner Low with a projected release date of November 9, 2025. *See* https://www.bop.gov/inmateloc/ (last accessed September 24, 2022). That facility is currently at Level 3 Operations, the highest and most restrictive operational level, due to COVID-19. https://www.bop.gov/locations/institutions/buf/ (last

---

[2] Although the Presentence Report contemplated a 4-level enhancement pursuant to USSG § 3B1.1(a) for Mr. Pimentel-Garcia's alleged role as a leader or organizer of a conspiracy involving five or more participants, the parties and the Court agreed at sentencing that his role was more akin to that of a *manager* or *supervisor* and that a 3-level enhancement pursuant to USSG § 3B1.1(b) was more appropriate. Dkt. 350 at 3-5 (emphasis added).

**MEMORANDUM DECISION AND ORDER - 4**

accessed September 24, 2022). The operational levels are based on a facility's "COVID-19 medical isolation rate, combined percentage of staff and inmate completed vaccinations series, and their respective community transmission rates." https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp. According to the Government's Response, FCI Butner Low was at Level 2 Operations indicating that COVID-19 is currently more of an issue for the facility.

## LEGAL STANDARD

To grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A). "[A] district court must enforce the administrative exhaustion requirement . . . when the government properly invokes the requirement." *United States v. Keller*, 2 F.4th 1278, 1280 (9th Cir. 2021). If the exhaustion requirement is met, the court may grant compassionate release only if the defendant shows that "extraordinary and compelling reasons" for a reduction exist and the court concludes that the 18 U.S.C. § 3553(a) sentencing factors do not weigh against such release. *Id*. at 1283-84 (citing *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021)).

A defendant bears the burden of demonstrating that relief is warranted when a motion for compassionate release under § 3582 is filed by the Director of the

MEMORANDUM DECISION AND ORDER - 5

Bureau of Prisons. *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998). Given that the Ninth Circuit has not yet considered the burden issue when the motion is filed by a defendant, district courts have continued to place the burden on the defendant. *See United States v. Blackwell*, No. 1:19-cr-00063-DAD-BAM-1, 2022 WL 2067877, at *4 (E.D. Cal. 2022) (citations omitted).

When addressing a § 3582 motion filed by a defendant, the district court is not bound by the Sentencing Commission's policy statements in USSG § 1B1.13 and its commentary. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (citing, *inter alia*, *United States v. Brooker*, 976 F.3d 228, 234-37 (2d Cir. 2020) and *United States v. McCoy*, 981 F.3d 271, 281-84 (4th Cir. 2020)). Accordingly, the policy statements may "inform a court's discretion" but are not binding, and a court may "consider *any* extraordinary and compelling reason for release that a defendant might raise." *Aruda*, 993 F.3d at 801 (internal citations omitted; emphasis in original).

## ANALYSIS

Mr. Pimentel-Garcia has clearly met the exhaustion requirement of § 3582(c)(1)(A) given that he requested compassionate release from the Warden of facility on January 19, 2022, and at least thirty days had passed before he filed the pending motion on April 15, 2022. Dkt. 447-1 at 21. The Government does not

contend otherwise. Therefore, the Court may now consider whether he has carried his two-pronged burden entitling him to release. The Court recognizes that it can deny compassionate release based on either prong, but it will consider both.

**1. Extraordinary and Compelling Reasons.**

Although the Court assumed when addressing the first motion that Mr. Pimentel-Garcia had established extraordinary and compelling reasons for release, the current more COVID-19-based motion requires more scrutiny. Given that health factors applicable to either of his claims overlap, the Court will address them together.

Mr. Pimentel-Garcia states that he requested compassionate release from the Warden a second time during a COVID-19 outbreak in FCI Butner Low when the Omicron BA.2 variant was then emerging. Of course, since then other Omicron variants have developed.

Mr. Pimentel-Garcia specifically identifies the following medical conditions all of which he claims taken together place him at a unique risk of a fatal outcome if he were to contract COVID: obesity, hypertension, prostate cancer the treatment for which left him immunocompromised, anemia, hyperlipidemia, and breathing problems. In support of his motion, he attached an eleven-page BOP Health Services Health Summary of Health Problems that lists the various conditions for

MEMORANDUM DECISION AND ORDER - 7

which he was treated throughout his incarceration (including many more than he has itemized) as Current, Remission, or Resolved. Dkt. 447-1 at 8-28.

Hypertension, obesity, hyperlipidemia, and abnormal breathing are among those listed as Mr. Pimentel-Garcia's current issues. *Id*. at 7-8. Prostate cancer was listed as a resolved issue with the notation that radiation treatment was completed on October 16, 2008. *Id*. at 6.

The CDC has listed various medical conditions that place an individual at a higher risk of a serious outcome from COVID-19.[3] The listed conditions result in an individual being "more likely" to experience severe illness from COVID-19 and, if so, be more likely to "be hospitalized, need intensive care, require a ventilator to help them breathe, or die." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated September 2, 2022; last accessed September 24, 2022).

---

[3] Those conditions are cancer, chronic kidney disease, chronic liver disease, chronic lung diseases, cystic fibrosis, dementia or other neurological conditions, diabetes (type 1 or 2), disabilities, heart conditions, HIV infection, immunocompromised condition or weakened immune system, mental health conditions, overweight and obesity, physical inactivity, pregnancy, sickle cell disease or thalassemia, current or former smoking, solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders, and tuberculosis. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated September 2, 2022; last accessed September 24, 2022).

**MEMORANDUM DECISION AND ORDER - 8**

Against this backdrop, the Court will address the various conditions asserted by Mr. Pimentel-Garcia most relevant to the CDC's commentary regarding an increased risk of a serious outcome from a COVID-19 reinfection as well as address the non-relevant conditions.

### a. Age and Obesity

Age alone presents a significant risk. "Older adults," defined as those over 65, are at "highest risk" of becoming very ill and account for more than 81% of COVID-19 deaths. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated September 2, 2022; last accessed September 24, 2022). Also, the risk of severe illness increases with age and as the number of underlying conditions increases. Staying current with vaccines is "especially important if you are older or have severe health conditions or one or more health conditions." *Id*. Mr. Pimentel-Garcia is 69 years of age. He clearly falls into the high-risk category of "older adult."

COVID-19 aside, age is also a significant factor with respect to motions based on health reasons filed pursuant to 18 U.S.C. § 3582(c)(1)(A). *See, e.g.,* USSG § 1B1.13 (Policy Statement), comment. (n.1(B)) (stating that extraordinary and compelling reasons for release exist where a defendant is at least 65 years of age, is experiencing a serious deterioration in physical health because of the aging

**MEMORANDUM DECISION AND ORDER - 9**

process, and has served at least 10 years or 75 percent of his term of imprisonment, whichever is less).

Obesity also presents a significant risk. The CDC considers an individual to be obese if his body mass index (BMI) is 30 or higher but under 40. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. A BMI of 40 or higher is indicative of severe obesity. *Id*. Of particular note, "[t] risk of severe illness from COVID-19 increases sharply with higher BMI." *Id*.

Here, Mr. Pimentel-Garcia's BMI on July 2, 2021, was 35, well within the obesity range. Dkt. 447-1 at 7. The Court notes that his BMI was 29.2 on October 24, 2019, indicating an upward progression over the last three years. *Id*. at 14.

### b. Hypertension

Hypertension is addressed in the CDC list the under the heart conditions category. It states only that "*possibly* high blood pressure (hypertension) can make you more likely to get very sick from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (emphasis added). This factor carries less weight than the other CDC-listed factors, but it still a relevant consideration.

### c. Prostate Cancer Treatment

MEMORANDUM DECISION AND ORDER - 10

The BOP medical summary indicates that Mr. Pimentel-Garcia's radiation treatment was completed in October of 2008. Dkt. 447-1 at 6.

The Court will not consider this factor because the American Cancer Society states that "radiation therapy . . . can lead to *short-term* (temporary) immune system damage because [it] affect[s] immune system blood cells for a fairly short period of time." *See* https://www.cancer.org/treatment/treatments-and-side-effects/physical-side-effects/low-blood-counts/infections/why-people-with-cancer-are-at-risk.html (emphasis added).

Mr. Pimentel-Garcia's radiation treatments ended almost 14 years ago. His prostate cancer is listed as resolved in the Summary of Health Problems. Absent any information on recent radiation treatment or other information, the Court cannot conclude that he is immunocompromised.

    d.  **Vaccination Status**

Mr. Pimentel-Garcia contracted COVID-19 in June or July 2020, required hospitalization, and subsequently recovered. Dkt. 447-1 at 15. He states that he has been vaccinated, but the Court is not aware of when he received his last vaccination or booster or whether he has received the recently released bivalent booster. This updated booster targets the BA.4 and BA.5 Omicron variants. https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html

**MEMORANDUM DECISION AND ORDER - 11**

(updated September 8, 2022; last accessed September 24, 2022).

Full vaccination lowers the risk of severe illness, hospitalization, and death. https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/overview-COVID-19-vaccines.html (updated August 24, 2022; last accessed September 24, 2022). However, there is no indication that it *eliminates* those risks. Also, other variants are likely to develop in the future. Indeed, it appears that other Omicron variants than the BA.4 and BA.5 are already beginning to circulate. *See* https://covid.cdc.gov/covid-data-tracker/#variant-proportions (chart updated through September 24, 2022).

### e. Other Health Conditions

Mr. Pimentel-Garcia contends that anemia, hyperlipidemia (high cholesterol), and breathing problems also make him more susceptible to a serious outcome from a COVID-19 infection. While those are not specifically listed as conditions placing him at a higher risk of an adverse outcome, they are a relevant consideration.

His Bureau of Prisons Health Services report also lists several other conditions as current problems. These include esophageal reflux; urethral stricture related to his history of prostate cancer; low back pain and lumbago; sciatica; nerve pain, neuralgia, radiculitis; multiple myeloma; and various dental issues. "Multiple

myeloma is a cancer that forms in a type of white blood cell called a plasma cell."

https://www.mayoclinic.org/diseases-conditions/multiple-myeloma/symptoms-causes/syc-20353378. Healthy plasma cells help fight infection. *Id*. Immediate treatment is not always necessary. *Id*.

**f.  Wheelchair Use**

Mr. Pimentel-Garcia contends he needs a wheelchair due to his various medical conditions. In response to the Government's contention that he had not provided any information regarding wheelchair use, Mr. Pimentel-Garcia submitted a report entitled Bureau of Prisons Health Services Medical Duty Status (Dkt. 450-1 at 1) that indicates he was issued a wheelchair on December 2, 2020, after having apparently originally been issued one on April 26, 2019. It also indicates that he is not cleared for food service and that he is classified in Medical Care Level 3. *Id*. The Court notes that the use of a wheelchair by definition would lead to physical inactivity, one of the other CDC listed conditions predisposing him to further risk if reinfected.

The Federal Bureau of Prisons Clinical Practice Guidance lists the following characteristics of inmates assigned to Medical Care Level 3:

> Care Level 3 inmates are outpatients who have complex, and usually chronic, medical or mental health conditions and who require frequent clinical contacts to maintain control or stability of their condition, or to prevent hospitalization or complications.

MEMORANDUM DECISION AND ORDER - 13

> They may require assistance with some activities of daily living (ADLs) that can be accomplished by inmate companions. Stabilization of medical or mental health conditions may require periodic hospitalization.

*See* https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf at 3.

This guidance appears to support Mr. Pimentel-Garcia's claims regarding the deterioration of his health and the adverse results of that deterioration.

### g. Conclusion

With regard to the COVID-19 claim, it appears that age and obesity and, to a lesser extent hypertension, are the primary areas of concern. Furthermore, it is possible, if not likely, that the other factors discussed above, taken together, may increase the likelihood of an adverse outcome from a COVID-19 reinfection.

The Government maintains that Mr. Pimentel-Garcia no longer presents an "extraordinary and compelling" reason for release because he has been vaccinated. However, vaccination does not eliminate all risk. Furthermore, the Government did not address the significance of Mr. Pimentel-Garcia's age which is an overarching COVID-19 risk factor. Rather, it concentrated on statistics pertaining to the earlier Delta variant and citing numerous cases supporting its claim that because he is vaccinated, Mr. Pimentel-Garcia's circumstances are not extraordinary and compelling. Many of the cited cases appear to predate the emergence of the more

**MEMORANDUM DECISION AND ORDER - 14**

contagious Omicron variants that result in breakthrough infections more often than the Delta variant.

Even aside from COVID-19 concerns, as stated above, age alone of at least 65 years warrants compassionate release if a defendant is experiencing a serious deterioration in his health due to the aging process and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. USSG § 1B1.13. The Government did not address this issue.

The Court finds that Mr. Pimentel-Garcia has established extraordinary and compelling reasons for release for two reasons either taken together or alternatively. First, his age, obesity, inactivity, and numerous other medical conditions present a significant risk of an adverse outcome from any COVID-19 reinfection despite being vaccinated. *See, e.g.*, *United States v. Ozkar*, No. 21-cr-00144-CRB-1, 2022 WL 3973745 (N.D.Cal. Aug. 25, 2022) (finding 67-year old vaccinated defendant established extraordinary and compelling circumstances for release given his age and newly diagnosed diabetes along with the seriousness of the COVID). Second, those issues same conditions and the other "current" conditions leading to the need for the use of a wheelchair together with the fact he is over 65 and has served both more than 10 years and at least 75% of his statutory sentence appears to come within the non-binding policy statement referred to

MEMORANDUM DECISION AND ORDER - 15

above. The only element that could possibly be challenged is whether his health conditions are the result of the "aging process." But that is a moot point. *Id.* (citing *Aruda*, 993 F.3d at 801-02 and granting release based on age and single additional risk factor of diabetes even though the circumstances did not fit perfectly into one of the non-binding policy statements).

### 2.  Applicable § 3353(a) Factors

The Court has considered the nature and circumstances of Mr. Pimentel-Garcia's and his history and characteristics. *See* 18 U.S.C. § 3553(a)(1). It has likewise considered the need for a sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; for adequate deterrence; for protection of the public; and for vocational or educational training or correctional treatment. *See* 18 U.S.C. § 3553(a)(2).

As stated above, the Government contends that Mr. Pimentel-Garcia remains a danger to society. It emphasizes that Mr. Pimentel-Garcia was a leader in a large, long-standing drug trafficking conspiracy involving a substantial amount of drugs. However, as noted above, the parties and the Court at sentencing considered him to be more of a manager or supervisor rather than a leader.

In response, Mr. Pimentel-Garcia argues that he had no criminal history and that his offense, while serious, was non-violent and did not involve credible threats

of violence or intimidation. He has received the minimum risk score using the BOP's Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) that would be low but for his immigration status, and he has not engaged in misconduct or received any infractions while incarcerated. Finally, he states that he has a life expectancy of anywhere from 2-5 years although there is no documentation to support that claim.[4] The Court finds that these factors identified by Mr. Pimentel-Garcia, together with his age and physical condition, outweigh any concerns that he would be a danger to society if released early.

In reaching this decision, the Court has reviewed the portion of the sentencing transcript addressing the § 3553(a) factors. Dkt. 350. At the time of sentencing in 2008, Mr. Pimentel-Garcia was 55 years old and already had a long list of medical issues that were sufficient together with age and deportation status to support a downward variance. Also, the Court was particularly impressed that Mr. Pimentel-Garcia apparently had not come to the United States to engage in drug trafficking. Rather, he had maintained regular employment while he was involved in the conspiracy and apparently had worked most of his life while in

---

[4] Mr. Pimentel-Garcia alleged in the beginning of his motion that he has a life expectancy of less than five years. Dkt. 447 at 1. In closing, he alleged that he has a life expectancy of less than two to three years. *Id*. at 7.

**MEMORANDUM DECISION AND ORDER - 17**

Mexico. This factor made a "huge difference" in the Court's mind at the time. *Id*. at 17-18.

In closing comments after imposing the 300-month sentence, the Court expressed the view that 25 years was a substantial punishment and questioned "whether it's worthwhile to have the Bureau of Prisons operating essentially as a geriatric center in assisting people who are in their senior years and who, once released, will be deported." *Id*. at 24. Given Mr. Pimentel-Garcia's current age and current medical status, the BOP is now essentially functioning as a geriatric center for him.

As stated above, Mr. Pimentel-Garcia's sentence was subsequently reduced to 262 months or 22 years -- still a substantial sentence with an obvious deterrent effect. He has slightly more than three years left on that sentence having served more than 80% of the statutory term of his sentence having been incarcerated and given credit for time served since April 3, 2007. Dkt. 447-1 at 3. According to the BOP Sentence Monitoring Computation Data as of March 10, 2022, Mr. Pimentel-Garcia had served 14 years, 11 months, and 8 days. *Id*. Six months have passed since that computation He has now served approximately 15 years, 6 months or 186 months.

Significantly, had Mr. Pimentel-Garcia pleaded guilty and received the usual

**MEMORANDUM DECISION AND ORDER - 18**

3-level reduction for acceptance of responsibility followed by the 2-level reduction for the drug guideline amendment, his guideline range would have been 188-235. Even without any variance due to age, health issues, deportation status, and good time credits, he would likely have been released by now assuming good time credits. In other words, there is simply no societal need for continued incarceration under the circumstances.

## CONCLUSION

Mr. Pimentel-Garcia is approaching 70 years of age, he has developed even more medical issues than he had at sentencing, he is wheelchair-bound, he has had no disciplinary issues, he has a low recidivism score. He has met his burdens of demonstrating that extraordinary and compelling reasons for release exist under 18 U.S.C. § 3582(c)(1)(A) and that the § 3353(a) factors warrant his release.

In his initial compassionate release motion, Mr. Pimentel-Garcia indicated that he had a caregiver and hospital available in Mexico. He did not so indicate in his current motion, but the Court assumes he has the same or similar arrangements given that at sentencing he had siblings and several children living in Mexico. Dkt. 350 at 16.

## ORDER

**IT IS ORDERED** that:

1. Ramiro Pimentel-Garcia's Motion for Release from Custody (Dkt. 447) is **GRANTED**.

2. Ramiro Pimentel-Garcia's sentence is reduced to a sentence of time served pursuant to 18 U.S.C. § 3582(c)(1)(A).

3. The Bureau of Prisons shall release Ramiro Pimentel-Garcia as soon as possible. Upon release from custody, Mr. Pimentel-Garcia shall enter the custody of Immigration and Customs Enforcement pursuant to his underlying detainer.

DATED: October 4, 2022

_____
B. Lynn Winmill
U.S. District Court Judge